UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EMMANUEL R.M.,

      Petitioner,

      v.

TONYA ANDREWS, et al.,

      Respondents.

No. 1:26-cv-01507-TLN-JDP

**ORDER**

This matter is before the Court on Petitioner Emmanuel R.M.'s[1] ("Petitioner") Ex Parte Motion for a Temporary Restraining Order ("TRO"). (ECF No. 2.) For the reasons set forth below, Petitioner's motion is GRANTED and Respondents are ORDERED TO SHOW CAUSE why the Court should not grant the Petition for Writ of Habeas Corpus and enter judgment in favor of Petitioner.

///

///

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

I. **FACTUAL AND PROCEDURAL BACKGROUND**[2]

The instant action arises from Petitioner's allegedly unlawful detention. (*See* ECF No. 2-1.) Petitioner is a 37-year-old citizen of the Democratic Republic of Congo who was born and raised in Gabon. (ECF No. 1 at 4.) Petitioner originally entered the United States as a student in 2008. (*Id.*)

In 2011, Petitioner was arrested for aggravated assault against a then-girlfriend. (*Id.*) Petitioner pleaded no contest and was sentenced to five years of probation and a fine, both of which he completed. (*Id.* at 4–5.) Petitioner was ordered removed on May 13, 2012, while in the custody of U.S. Immigration and Customs Enforcement ("ICE"), where he continued to be detained after the final removal order. (*Id.* at 5.) An appeal of the removal order was filed but ultimately withdrawn on July 23, 2012. (*Id.*) After the final order of removal, Petitioner remained detained while the U.S. Department of Homeland Security ("DHS") attempted to remove him to Gabon, where he is not a citizen, and the Democratic Republic of Congo, which refused to issue travel documents. (*Id.*)

On October 16, 2012, after approximately 85 days of post-order detention, ICE released him with an Order of Supervision. (*Id.*) Petitioner dutifully attended his annual ICE check-ins every year for more than 12 years, and complied with all other conditions of supervision, including no new arrests. (*Id.*)

Petitioner is now married to a U.S. citizen, and she has three sons from previous relationships, ages 21, 18, and 16 years old. (*Id.*) Petitioner worked two jobs to support his family. (*Id.*) Petitioner worked full time at a Tyson meat processing plant in Denison, Texas, and part-time at a convenience store. (*Id.*)

Petitioner's wife filed an I-130 petition for him to obtain permanent residence as the spouse of a U.S. citizen. (*Id.*) The petition was approved in 2020 and their attorney at the time advised them to file an I-485 Application to Register Lawful Permanent Residence with U.S. Citizenship and Immigration Services ("USCIS"). (*Id.*) The application was denied because

---

[2]    The instant factual background is taken largely verbatim from the Petition for Writ of Habeas Corpus (the "Petition"). (*See* ECF No. 1.)

USCIS did not have jurisdiction due to the removal order.  (*Id.*)

Petitioner has not been arrested by police or had any criminal problems since his release from ICE detention under the Order of Supervision on October 16, 2012.  (*Id.*)

On July 3, 2025, at his most recent check-in with ICE, Petitioner was arrested.  (*Id.* at 6.)  After processing at the Dallas ICE office, he was transferred to Prairieland Detention Center.  (*Id.*)  On July 21, 2025, Petitioner filed a motion to reopen his removal proceedings with the Executive Office for Immigration Review ("EOIR") in Dallas, Texas.  (*Id.*)  On July 25, 2025, the immigration judge denied the motion.  (*Id.*)

On September 13, 2025, Petitioner was transferred to the Golden State Annex detention facility in Fresno.  (*Id.*)  ICE initially attempted to remove Petitioner to Gabon, his country of birth, but Gabon refused to accept him because he is not a Gabonese citizen.  (*Id.*)  ICE is now trying to remove Petitioner to the Democratic Republic of Congo, but efforts thus far have proved unsuccessful.  (*Id.*)

As of the filing of the Petition, Petitioner had been re-detained for a total of 230 days with no foreseeable removal or end to detention.  (*Id.*)  Petitioner challenges the legality of his detention and seeks immediate release.  (*See id.*)

On February 24, 2026, the Court directed Respondents to file any opposition to Petitioner's motion for TRO by February 26, 2026.  (ECF No. 8.)  Respondents did not file any opposition.

## II.    STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner

shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

### III.    ANALYSIS[3]

Petitioner argues he has a likelihood of success on the merits of his claim, he is suffering irreparable harm, the balance of equities is in his favor, and an injunction is in the public interest. (ECF No. 2 at 3–4.)  The Court will consider each of these arguments in turn.

#### A.    Likelihood of Success on the Merits

Petitioner argues he is likely to succeed on the merits of his Fifth Amendment Due Process claim pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001), because he can demonstrate he has been detained beyond the limit of 180 days and it is not substantially likely that he will be removed in the reasonably foreseeable future.  (ECF No. 2 at 3.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

8 U.S.C. 1231(a) ("§ 1231(a)") governs detention of a noncitizen after a final order of removal has been issued.  This statute provides that once a removal order is final, the Government must "remove the [noncitizen] from the United States within a period of 90 days," 8 U.S.C. § 1231(a)(1)(A).  During the initial 90-day removal period, the Government shall detain the noncitizen.  *Id.* § 1231(a)(2).  However, under § 1231(a)(6), a noncitizen may be detained for

---

[3]    The Court finds Petitioner has met the requirements for issuing a temporary restraining order without notice. *See* Fed. R. Civ. P. 65(b).  Assistant U.S. Attorney Haddy Abouzeid has appeared as the counsel of record for Respondents.  (ECF No. 6.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

4

more than 90 days if the noncitizen has been ordered removed due to a criminal conviction.  In *Zadvydas*, the Supreme Court addressed how long a noncitizen may be detained pursuant to § 1231(a)(6).  533 U.S. 678.  The Supreme Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.  The Supreme Court recognized a presumptively reasonable six-month period of detention after a removal order has been issued, "[a]nd for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701.  If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*  If the noncitizen meets this burden, the Government must "introduce evidence to refute that assertion." *Pelich v. INS*, 329 F.3d 1057, 1059 (9th Cir. 2003); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006) ("Given the unreasonable length of [petitioner's] detention, the unforseeability of his removal, and the failure of the government to rebut his showing that there is no significant likelihood of removal in the reasonably foreseeable future, the government's continued detention violates federal law[.]").

Courts considering whether removal is reasonably foreseeable "have generally focused on whether a petitioner has received, or will receive, travel documents that would make the petitioner's removal possible." *Akbarian v. Warden, et al.*, No. 5:25-CV-03584-ODW (AGRX), 2026 WL 127941, at *3 (C.D. Cal. Jan. 12, 2026) (citing *Min v. Santacruz*, No. 2:25-cv-10971-MEMF (ASx), 2025 WL 3295564, at *4 (C.D. Cal. Nov. 26, 2025) (finding that petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future because "[n]o travel documents have been applied for, let alone secured")); *see also Belach v. Marin*, No. 5:25-cv-03452-SPG (RAOx), 2026 WL 75920, at *4 (C.D. Cal. Jan. 5, 2026) (concluding petitioner "has shown good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future," as petitioner "lacks valid travel documentation" and "has been unable to obtain a Russian passport").

///

Here, as of the filing of his motion for TRO, Petitioner had been re-detained for a total of 230 days, well past the six-month presumptively reasonable period.  *Zadvydas*, 533 U.S. at 701.  Petitioner demonstrates "there is no significant likelihood of removal in the reasonably foreseeable future," and therefore raises serious questions about the lawfulness of his detention.  *Id.*  Petitioner asserts that after the final order of removal was issued on May 13, 2012, DHS attempted to remove him to Gabon, where he is not a citizen, and the Democratic Republic of Congo, which refused to issue travel documents.  (ECF No. 1 at 5.)  Petitioner was subsequently released with an Order of Supervision on October 16, 2012.  (*Id.*)  Petitioner asserts that after he was re-arrested on July 3, 2025, ICE has attempted to remove him to Gabon, which has refused to accept him because he is not a citizen.  (*Id.* at 6.)  Petitioner then asserts ICE has attempted to remove him to the Democratic Republic of Congo, but efforts have so far proven futile.  (*Id.*)  Petitioner attaches a declaration to the instant motion from an ICE Deportation Officer who attests that, as of February 17, 2026, Enforcement and Removal Operations has not received a response from the Embassy of the Democratic Republic of Congo to a travel document request for Petitioner.  (ECF No. 2-1 at 9.)  Petitioner also attaches a letter from the Ambassador of the Embassy of Gabon, which states that the Embassy "is unable to establish any prior legal Gabonese citizenship status" granted to Petitioner by Gabon and therefore it the Embassy is "unable to issue the requested travel document on [Petitioner's] behalf."  (*Id.* at 5–6.)

As Petitioner provides evidence showing "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to Respondents to "respond with evidence sufficient to rebut that showing."  *Zadvydas*, 533 U.S. at 701.  However, Respondents have failed to respond to this Court's February 24, 2026 Order directing them to file any opposition by February 26, 2026.  (ECF No. 8.)  Accordingly, as the "presumptively reasonable" detention period established in *Zadvydas* has long passed and Petitioner sets forth information showing his removal is not reasonably foreseeable, the Court finds Petitioner establishes a likelihood of success on the merits of his Fifth Amendment Due Process Clause claim.  *See Belach*, 2026 WL 75920, at *4.

///

### B.    Irreparable Harm

Petitioner also establishes he will suffer irreparable harm in the absence of a TRO.  As of the date of Petitioner's motion, he had been deprived of his liberty for more than 231 days.  (ECF No. 2 at 3.)  The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Further, Petitioner asserts he has suffered irreparable harm from the separation from his family (including his U.S. citizen wife and three stepchildren), who all reside in Denton, Texas.  (ECF No. 2 at 3.)  Petitioner also asserts he has suffered physically by contracting COVID and other contagious diseases while detained unnecessarily.  (*Id.*)  This factor weighs in Petitioner's favor.

### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  The Court finds persuasive Petitioner's argument that the Government will suffer no substantial harm from a TRO because Respondents have been given ample opportunity (a minimum of 230 days) to effectuate Petitioner's removal and have not been able to do so.  (ECF No. 2 at 4.)  The Court further agrees with Petitioner that the public interest favors ensuring DHS and ICE adhere to all applicable laws and statutory requirements.  (*Id.*)  Finally, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's motion and issues a TRO ordering Petitioner's immediate release on the same terms as he was released prior to his detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

///

## IV.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for a Temporary Restraining Order (ECF No. 2) is GRANTED.  This Court will rule on the Petition following the Order to Show Cause described above;

2. Respondents must IMMEDIATELY RELEASE Petitioner Emmanuel R.M. from custody under the same conditions he was released prior to his current detention.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  **Respondents must file a notice certifying compliance with this provision of the Court's Order by March 4, 2026**;

3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation/custody hearing before a neutral decisionmaker, where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present;

4. Respondents are ORDERED TO SHOW CAUSE why this Court should not grant the Petition for Writ of Habeas Corpus (and any filed supplement or amendment) and enter judgment in favor of Petitioner.  Respondents shall file responsive papers by **March 10, 2026**. Petitioner may file a reply, if any, by **March 13 2026**.  **The parties shall indicate in their briefing whether they request a hearing**.  The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule;

5. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order on two days' notice to Petitioner.  Fed. R. Civ. P. 65(b)(4); and

6. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: March 3, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

9